IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AARON DEVON FOOTES, | * | |
| Petitioner, | * | |
| v. | * | Civil Action No. JRR-16-786 |
| FRANK B. BISHOP, JR., and THE ATTORNEY GENERAL OF THE STATE OF MARYLAND, | * * | |
| Respondents. | * *** | |

**MEMORANDUM**

Aaron Devon Footes brings this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, collaterally attacking his 1997 state sentence. ECF 1-1. Footes contends his *de facto* life sentence violates the Eighth Amendment to the United States Constitution, as well as Supreme Court precedent (*Miller v. Alabama*, 567 U.S. 460 (2012) and *Montgomery v. Louisiana*, 577 U.S. 190 (2016)) because he was a juvenile when he committed his crime. *Id*. Respondents ask the court to lift the stay imposed in this case should and that the court deny or dismiss the Petition. ECF 33. Footes was notified of his right to respond (ECF 34) and has done so. ECF 36. The Petition is ripe for adjudication; no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023); *see also* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000). For the following reasons, the Court lifts the stay, denies the Petition, and declines to issue a certificate of appealability.

**I.     Background**

After a jury trial, Petitioner Aaron Devon Footes was convicted by the Circuit Court for Prince George's County, Maryland on September 10, 1997, of first-degree felony murder, robbery

with a deadly weapon, robbery, and use of a handgun in the commission of a crime of violence. ECF 12-1; ECF 12-2. On September 29, 1997, he was sentenced to life imprisonment on the murder conviction, plus a consecutive 20-year term of confinement for the handgun offense. The remaining offenses merged. *Id*. Footes' convictions were affirmed on June 10, 1998, by the Maryland Court of Special Appeals (now the Appellate Court of Maryland). His petition for writ of certiorari was denied by the Court of Appeals of Maryland (now the Supreme Court of Maryland) on September 15, 1998. *Id*.

Footes initiated state post-conviction proceedings on June 15, 2006. ECF 12-1; ECF 12-2. The petition was withdrawn without prejudice on May 4, 2007. *Id*. Footes' second petition for post-conviction relief, filed September 24, 2007, was granted on December 19, 2008, in regard to Footes' right to file a belated motion for modification, but was otherwise denied. *Id*. His application for leave to appeal was denied by the Court of Special Appeals on June 29, 2011. *Id*. Thereafter, in 2013 and 2015, Footes twice unsuccessfully moved to reopen his state post-conviction proceedings on grounds of ineffective assistance of counsel. ECF 33-2 at 49, 210-20, 250-312, 322-24.

On March 24, 2009, Footes filed a belated Motion for Reconsideration/Modification of his sentence pursuant to Maryland Rule 4-345. ECF 33-2 at 156-61. Counsel subsequently supplemented the motion. *Id*. at 162-70. Following hearing on March 26, 2010, the state court granted the motion in part, amending the 20-year consecutive sentence for the handgun offense to run concurrently with Footes' life sentence for murder. *Id*. at 48, 171. Footes' sentence otherwise remained unchanged. *Id*.

Footes filed a Petition for Writ of Habeas Corpus in this Court in 2011, which was dismissed as time-barred. *Footes v. Shearin, et al*., Civil Action No. WDQ-11-1122 (D. Md.).

Footes returned to state court and filed a Motion for Reconsideration/Modification of his sentence pursuant to Maryland Rule 4-345, both pro se and through counsel (ECF 33-2 at 172-90), which the Court held in abeyance by order of May 3, 2011. *Id*. at 191.  Following hearing on February 7, 2014, the state court denied the motions. *Id*. at 16, 50, 218.

On April 8, 2015, Footes filed a Motion to Correct Illegal Sentence pursuant to Maryland Rule 4-345(a). ECF 3-2 at 325-28. In this Motion, Footes argued that his life sentence was unconstitutional under *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012). *Id*.  There, Footes argued that because the Governor of Maryland stated he would deny any request for parole for an inmate serving a life sentence, his sentence was in effect a sentence of life without the possibility of parole.  *Id*.  Footes also filed a state habeas petition raising similar arguments. *Id*. at 330-59.  The court denied the petition on May 21, 2015, (*id*. at 375-76) and the motion on May 22, 2015.  *Id*. at 372-74.  Footes did not note a timely appeal. *Id*. at 51.

In August 2015, his second Petition for Writ of Habeas Corpus filed in this Court was dismissed as a successive petition.  *Footes v. Bishop*, Civil Action No. DKC-15-2525 (D. Md.). On January 29, 2016, Footes filed a Motion to File a Successive § 2254 Petition, which was granted on February 22, 2016, by the United States Court of Appeals for the Fourth Circuit, with a finding that Footes, "made a prima facie showing that the new rule of constitutional law announced in *Miller,* [567 U.S. 460 (2015)] (holding 'the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders') and made retroactive by *Montgomery* [577 U.S. 190 (2016)], may apply to his case." ECF 1-1.

In response to the Fourth Circuit ruling, on March 14, 2016, Footes filed a "Motion to Proceed with Petition of Record and/or for Forms so that Petitioner May file a Second or

3

Successive 28 U.S.C. § 2254 (2012) Petition." ECF 1. The Court construed Footes' filing as a Petition for Writ of Habeas Corpus and directed he file a supplement. ECF 2.

In his Supplemental Petition, Footes alleges he was 17 years old at the time the crime was committed and that his life sentence violates the Eighth Amendment prohibition against cruel and unusual punishment. ECF 3 at 5-6. He also alleges the state trial and appellate counsel allowed perjured testimony during his trial; the prosecutor failed to disclose exculpatory evidence; he was not advised of his right to prompt presentment; and trial counsel failed to request the jury be instructed on the lesser included offenses to first-degree murder. *Id*. at 6.

Initially, Respondents filed an Answer to the Petition asserting that Footes had not met the standard for filing a second or successive petition, or, alternatively, that the matter should be stayed so that Footes could exhaust his claim regarding the constitutionality of his life sentence in state court. ECF 12. Respondents also argued that the authorization provided by the Fourth Circuit only applied to Footes' Eighth Amendment claim regarding his life sentence and, as such, the other claims raised in his supplemental petition were subject to dismissal. *Id*.

The Court disagreed with Respondents' position that Footes had not met the standard for filing a second or successive petition but agreed that the Fourth Circuit only granted authorization to file a second/successive petition based upon the Eighth Amendment claim and determined that Footes' additional allegations would not be considered. ECF 18. Because it was not evident whether Footes had then brought his Eighth Amendment *Miller/Montgomery* claim before any state court, this Court stayed the case and held it in abeyance so that Footes could exhaust his state court remedies. ECF 18 and 19. Although Footes had, at that time, exhausted his direct appeal process and had previously filed for state post-conviction relief, he was directed to present his Eighth Amendment claim in state court in a motion to reopen post-conviction proceedings. *Id*.

4

The Court also noted that Footes could present his Eighth Amendment claim by way of a motion to correct illegal sentence pursuant to Maryland Rule 4-345(a) and observed that Footes then had such a motion pending, but the basis of the motion was unclear. He was cautioned that his claim must be presented in the motion to reopen post-conviction proceeding and any denial of his claim must be appealed to the highest state court with authority to consider the claim in order for it to be properly exhausted for purposes of federal habeas review. ECF 18. Additionally, Footes was directed to file status reports with the Court on the progress of his post-conviction case and motion to correct illegal sentence. ECF 19. Thereafter, Footes filed a number of status updates, many at the prompting of the Court. *See, e.g.,* ECF 21, 23, 24, 27 and 29 (status reports); ECF 20, 26, 28, and 39 (orders directing Footes to respond).

In the meantime, on September 27, 2016, Footes filed in state court a Motion to Correct an Illegal Sentence Pursuant to Maryland Rule 4-345(a). ECF 33-3 at 41-54. In that Motion, Footes asserted a *Miller/Montgomery* Eighth Amendment claim. *Id*. The state court held the motion in abeyance so Footes could seek counsel. *Id*. at 70-71. Footes filed two pro se supplements to the motion. *Id*. at 73-102. The State opposed the motion (*id*. at 103-65), and Footes filed a pro se reply. *Id*. at 117-34. Ultimately, on August 30, 2019, the state court denied the motion without explanation. *Id*. at 139. Footes filed a notice of appeal of the denial of the motion (*id*. at 140), but the appeal was dismissed due to Footes' failure to timely transmit the record. *Id*. at 158-59.

On May 31, 2022, Footes filed, through counsel, a "Motion for Reduction of Sentence Pursuant to the Juvenile Restoration Act" ("JUVRA"). ECF 33-3 at 160-344. The motion was supplemented and hearings on the motion held. ECF 33-3 at 350-70. Ultimately, the court resentenced Footes to life imprisonment, with all but 45 years suspended for the murder

conviction, and 20 years' incarceration to be served concurrently for the handgun offense. ECF 33-4 at 6; ECF 33-3 at 371-72.

Thereafter, Footes filed a Motion for Reconsideration of this new sentence, pursuant to Maryland Rule 4-345(e), which the state court held in abeyance. ECF 33-3 at 373-75. Footes also asked for an additional hearing because the Maryland Parole Commission had not moved quickly enough to grant him parole. *Id*. at 376-80. The motion was denied on October 12, 2023. *Id*. at 382.

On October 31, 2023, Respondents filed the pending Motion to Lift Stay and to Dismiss and/or Deny Petition. ECF 33. Respondents argue that the stay should be lifted and the Petition dismissed or denied because: (1) Footes failed to exhaust his *Miller/Montgomery* claim as directed; (2) the decision in *Jones v. Mississippi*, 593 U.S. 98 (2021), forecloses Footes' claim; and (3) Footes has been resentenced by the state, rendering his claim moot. *Id*. Footes responded.[1] ECF 36.

**II. Analysis**

Footes' claim centers on imposition of his life sentence for a crime he committed as a juvenile. Over the past few decades, the Supreme Court has issued several decisions regarding the sentencing of juvenile offenders.

In *Roper v. Simmons*, 543 U.S. 551 (2005), the Supreme Court concluded that evolving standards of decency prohibit a death sentence for a defendant who was under the age of eighteen

---

[1] Footes' claims regarding the scheduling of his parole hearing and that his new sentence is illegal, both raised for the first time in his opposition to Respondents' motion, are not properly before the Court and will not be considered. *Mylan Lab'ys, Inc. v. Akzo, N. V.,* 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd,* 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd,* 141 F.3d 1162 (4th Cir. 1998); *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 692 (D. Md. 2017) (stating it is axiomatic that a plaintiff may not use their memorandum in opposition to amend the complaint).

at the time of the offense. The Court explained that juveniles differ from adults in fundamental ways including that: (1) a "lack of maturity and an underdeveloped sense of responsibility" that "often result[s] in impetuous and ill-considered actions and decisions;" (2) they are "more vulnerable or susceptible to negative influences and outside pressures, including peer pressure;" and (3) "the character of a juvenile is not as well formed as that of an adult." *Id.* at 569–71 (internal citations and quotation marks omitted). The *Roper* Court explained:

> [I]t is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed. Indeed, the relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside.

*Id.* at 570 (internal quotations and citations omitted).

Next, in *Graham v. Florida*, 560 U.S. 48 (2010), the Supreme Court considered a life sentence imposed on a juvenile for armed burglary. Florida had abolished its parole system; therefore, a life sentence meant that a defendant had no possibility for release unless granted executive clemency. *Id.* at 57. The Court held:

> The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term.

560 U.S. at 82

Then, in 2012, the Supreme Court decided *Miller v. Alabama*, holding that even in homicide cases, a mandatory sentence of life without parole cannot be imposed on a juvenile. 567 U.S. 460, 479 (2012). "Such mandatory penalties, by their nature, preclude a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." *Id.* at 476. Accordingly, a sentence of life without parole for a juvenile convicted of homicide may

7

be imposed only after the court has the opportunity to consider all mitigating circumstances, including the offender's age and age-related characteristics. *Id.* at 489.

In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Court held that "*Miller* announced a substantive rule of Constitutional law," which applies retroactively. *Id.* at 212. *Miller* "bar[red] life without parole . . . for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility." *Id.* at 209. The Court concluded that juvenile offenders sentenced in violation of *Miller* "must be given the opportunity to show their crime did not reflect irreparable corruption; and if it did not, their hope for some years of life outside prison walls must be restored." *Id.* at 213.

Last, relevant here, in *Jones v. Mississippi*, 593 U.S. 98 (2021), the Court clarified that in the case of a defendant who committed a homicide when he was under eighteen, neither *Miller* nor *Montgomery* required the sentencing court, in a discretionary sentencing system, to make a separate fact finding of permanent incorrigibility before sentencing the defendant to life without parole. Rather, *Jones* clarified that *Miller*

> mandated 'only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing' a life-without-parole sentence. And in *Montgomery v. Louisiana,* which held that *Miller* applies retroactively on collateral review, the Court flatly stated that '*Miller* did not impose a formal factfinding requirement' and added that 'a finding of fact regarding a child's incorrigibility ... is not required.'

*Id*. at 101. (citations omitted). Simply put, *Jones* clarified that *Miller* and *Montgomery* require consideration of an offender's youth, but not a particular fact finding; nor is a finding of permanent incorrigibility constitutionally necessary.

As to Maryland law, prior to 2022 – and therefore at the time of Footes' initial sentencing – Maryland's parole scheme required gubernatorial approval for a Maryland inmate to be paroled from a life sentence. *Farmer v. State*, 481 Md. 203, 210, n.1 (2022). In practice, Maryland

prisoners serving life sentences were rarely paroled. *Carter v. State*, 461 Md. 295, 323-25 (2018). "Legislation enacted in 2021[, however,] eliminated the Governor's role in the parole process." *Farmer*, 481 Md. at n.1. Specifically, "the [Maryland] General Assembly enacted the Juvenile Restoration Act ('JUVRA') over the Governor's veto. Chapter 61, Laws of Maryland 2021, codified at Maryland Code, Criminal Procedure Article, §§ 6-235, 8-110. JUVRA made three significant changes to sentencing practices in Maryland for juvenile offenders convicted as adults." *Jedlicka v. State*, 481 Md. 178, 188-89 (2022).

Relevant to Footes' claim, "JUVRA authorized a juvenile offender sentenced before its effective date (October 1, 2021) who has spent more than 20 years in prison to file a motion to reduce the remaining sentence." *Id*.; *see also* MD. CODE ANN., CRIM. PROC. § 8-110(b)(2) (entitling a qualified individual to a hearing on a JUVRA motion to reduce to the duration of a sentence); § 8-110(d) (listing youth related factors the court must consider when adjudicating a JUVRA motion to reduce the duration of sentence).

Because Maryland abolished the Governor's authority over parole and enacted JUVRA since the time of Footes' initial sentencing and the institution of these proceedings, his § 2254 Petition is moot. Footes' Petition is also moot because, since the matter was stayed and held in abeyance, he has been resentenced in accordance with a motion filed under JUVRA, and he is no longer serving the indeterminant life sentence he initially challenged through this action.

"A habeas corpus petition is moot when it no longer presents a case or controversy under Article III, § 2, of the Constitution." *Aragon v. Shanks*, 144 F.3d 690, 691 (10th Cir. 1998) (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). There is no case or controversy unless the petitioner has suffered an actual injury that can "be redressed by a favorable judicial decision." *Spencer*, 523 U.S. at 7 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)); *see Spencer*, 523 U.S.

at 18 (stating that the federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"). Moreover, Courts have recognized that state law enacted during litigation may moot certain claims then pending before the Court. *See, e.g.*, *Sawyer v. Whitley*, 945 F.2d 812, 814 n.1 (5th Cir. 1991) (rejecting Eighth Amendment challenge against electrocution as moot following enactment of state law changing method of execution from electrocution to lethal injection), *aff'd*, 505 U.S. 333 (1992).

The record demonstrates that Footes was resentenced in 2023 pursuant to JUVRA. Even if *Miller* and *Montgomery* entitled Footes to a sentencing proceeding where his youth and its attendant characteristics were expressly considered, which *Jones* clarifies he was not, Footes received such a hearing during his JUVRA resentencing in 2023. After considering all relevant factors, Footes received a reduced sentence. As such, Footes is no longer subject to the indefinite life sentence he initially challenged. Further, and importantly, Footes is currently serving a partially suspended life sentence under which he is parole eligible and which also provides for his entitlement to release after serving no more than 45 years of his sentence. Accordingly, his Eighth Amendment *Miller/Montgomery* claim is moot.[2] In light of the foregoing, the Court declines to reach Respondents' additional arguments in opposition to the Petition.

---

[2] This conclusion aligns with other districts that have considered similar claims following state court law changes. *See, e.g.*, *Johnson v. Woodson*, No. 3:13-CV-404, 2020 WL 1451979, at *1–8 (E.D. Va. Mar. 25, 2020) (enactment of Virginia law allowing for a parole eligibility for juvenile lifer mooted habeas claim); *Hack v. Cassady*, No. 16-04089-CV-W-ODS, 2019 WL 320586, at *5 (W.D. Mo. Jan. 24, 2019), *certificate of appealability denied*, No. 19-1953, 2019 WL 5783331 (8th Cir. Aug. 14, 2019) ("With the enactment of [Missouri Statute §] 558.047, Petitioner is no longer serving a sentence of life without parole."); *Scott v. California*, No. 5:14-CV-2648-R (SK), 2018 WL 6070938, at *2 (C.D. Cal. Mar. 8, 2018) (newly-enacted California law mooted petitioner's request for *Miller* resentencing so long as petitioner "is provided a meaningful opportunity at parole within 25 years of incarceration, which is what [California law] provides.")

### III. Certificate Of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id*. at 338.

Upon review of the record, this Court finds that Footes has not made the requisite showing. The Court, therefore, declines to issue a Certificate of Appealability. Footes may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

### IV. CONCLUSION

A separate Order lifting the stay and denying the Petition as moot follows. A certificate of appealability shall not issue.

April 14, 2025

/S/
_____
Julie R. Rubin
United States District Judge